STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2007 SEP 13 P 12: 35

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-85
TED-CUM- 9/13/2007

THE PORTLAND COMPANY,

    Plaintiff,

v.

THE CITY OF PORTLAND,

    Defendant.

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

JAN 15 2008

## I.     BACKGROUND

The Portland Company (POCO) alleges that it is the owner of certain private rights to maintain railroad tracks on a piece of property along Portland's eastern waterfront and that the City of Portland (City) unlawfully exercised statutory eminent domain authority to take plaintiff's private rights and to use a portion of POCO's property to promote and assist private development in the nearby area, including that where POCO's track rights are located.

POCO contests the lawfulness of the taking, including the lack of any "public exigency;" that the taking of the property is for private development, not public use; that the City obtained the property to turn over to private parties; that the taking interfered with plaintiff's contract rights; and, that the taking is arbitrary, capricious, and abuse of discretion and illegal.

In the alternative, POCO alleges that the City has not provided fair and adequate compensation for the taking and has asked for a jury trial to establish appropriate compensation.

As an initial proceeding, the court held a jury-waived trial concerning the purpose and method of the taking to determine whether the City's action is justified.

## II.    DISCUSSION

### A. Exigent Circumstances

The eastern waterfront area was historically used to support a working waterfront. The area was dominated by railroad yards, two large grain elevators, a classic old architectural treasure of a building used as a passenger terminal by the Grand Trunk Railway and deep water docks for sea transport of goods to and from domestic and foreign ports. That historic use has long since disappeared and is likely to return only in the dreams of historians. In its place, even thought the area has not been formally designated as blighted or slum, the City is developing the area in a manner that is unlikely to succeed without public participation.

It is well established in Maine that, without the consent of the owner, the government may only exercise the power of eminent domain to obtain private property when the property is to be put to public use and when a public exigency requires it. ME. CONST., at I, § 21. See *Blanchard v. Dept. of Transp.*, 2002 ME 6, ¶¶ 27 and 28, 798 A.2d 1119, 1126 and also in the dissent, ¶ 41 and at 1128.

The appropriateness of the taking here depends upon the individual facts of this case.

In *Blanchard*, the Law Court approved the taking of private land for use as a parking lot by customers of a privately owned ferry company. The ferry company does not transport cars; however, it is the primary means of access to Chebeague Island which is not served by a bridge. The Department of Transportation (DOT) determined that the availability of convenient parking adjacent to the wharf on Cousins Island

> was essential for the operation of a ferry transportation system connecting Chebeague Island residents with their jobs, schools, hospitals, health care providers, food stores and other essential mainland services.

*Blanchard,* ¶ 5, at 1122.

After the taking DOT leased the parking lot to the Town of Yarmouth (Town) which in turn leased it to the ferry company. The leases by DOT and the Town contained provisions to protect the public use in the event problems developed with the ferry service.

It is necessary that there be both exigent circumstances to warrant the taking and a dedication to public use. Notwithstanding the position of the dissenting justices in *Blanchard* questioning the existence of any public exigency, they recognized that the court must give due deference to the determination of the legislative body and that the court review "is limited to determining whether there is any rational basis to support a finding of public exigency." *Id.* at ¶ 43, 1129, citing *Ace Ambulance Service Inc. v. City of Augusta,* 337 A.2d 661, 663 (Me. 1975).

In this case, the City is actively promoting the redevelopment of the eastern waterfront area which includes the so-called Riverwalk Project that is at the core of this taking.[1]

In its Order of Condemnation, plaintiff's exhibit 23, the City set out a Declaration of Purpose to acquire the property rights of POCO relative to its authority to maintain a rail connection and railroad tracks in the area of development.

To support is purpose, the City made detailed and specific findings. The development of the area includes construction of a parking garage, a street (Hancock Street Extension) and a large building for residential and retail use to be constructed by Riverwalk. The City maintains that any transfer of property to Riverwalk must be free and clear any rights possessed by POCO. In essence, the City has determined that the

---

[1] The Riverwalk Project is in conjunction with the Ocean Gateway Project, but separate and distinct from other development proposals in the area.

3

Riverwalk Project cannot go forward if POCO's rights are not obtained. The evidence at trial and in the record sufficiently supports the City's determination of exigent circumstances as to this area of development ("A-1" and "A-2") and the court does not find that to be in error.

The City's action to take plaintiff's rights includes immediate development of sections "A-1" and "A-2". Section "A-3" is not included in the immediate plan; however, its projected use as a parking lot to support commercial retail and general public use of the area is not a change from its present use and no exigency has been demonstrated as to "A-3". Possible future use for parking or other undesignated development does not fall within "exigent" circumstances. Inclusion of plaintiff's rights in "A-3" within the taking is not appropriate; however, the court does not find that the City's action to take "A-3" was in bad faith. That portion of the taking is void and plaintiff is entitled to restoration of all rights therein.

## B. Public Use

The issue of whether the taking is for one of public use, however, is a question of law for the court. *Blanchard*, ¶ 26, at 1126.

Each section of the remaining parcel in question ("A1" and "A2"), which includes plaintiff's track rights, has a proposed different use.

"A-1" is being developed as a new public street that is designated to provide direct public access by vehicle and foot to Ocean Gate, a public dock for passenger and vehicle traffic for boats, ferries and ships.

"A-2", known as "Riverwalk" is a private development, that will include a large multi-story building with a combination of residential and commercial/retail use open to the public. This private venture will be supported by the construction of a large, multi-story parking garage on the opposite side of Fore Street. Although the garage is

4

not located on the area in question, its construction is relevant and necessary to support the public use of the other development.

## C. Violation of 23 M.R.S.A. § 153-B

Prior to the formal taking by the City, POCO had been involved in negotiations with Riverwalk for the private transfer of its rights. POCO alleges that the negotiations included discussion of a sale for several hundred thousand dollars.

POCO alleges that the City violated 23 M.R.S.A § 154-B by initiating the eminent domain in a manner that interfered with the private negotiations. Section 154-B provides

> **Coercive action**
> In no event shall the [City] either advance the time of condemnation, or defer negotiations or condemnation or take any other action coercive in nature, in order to compel an agreement on the price to be paid for property or property rights.

The timing of the City's taking is at least curious. Although there were negotiations between Riverwalk and POCO, there is evidence that the City unilaterally inserted itself into the process, most likely out of frustration over the seemingly lack of progress or finality.

Section 154-B does not provide a specific remedy or measure of damages and there is no case law on point. Because the court has separately determined that the taking of "A-1" and "A-2" was proper, issues concerning coercion "in order to compel an agreement on the price to be paid" are properly admissible at trial as relevant to the manner in which the City set the amount to be paid for the taking and the amount accepted by plaintiff.

**D. Attorneys' Fees**

The court reserves the issue of attorneys' fees until the conclusion of all trial proceedings.

### III.    DECISION AND ORDER

The clerk shall make the following entries as the Decision and Order of the court:

A.    The taking of plaintiff's track rights on parcels "A-1" and "A-2" by statutory eminent domain proceedings was for exigent circumstances and public use.

B.    The taking of plaintiff's track rights on parcel "A-3" by statutory eminent domain proceedings was not under exigent circumstances and is void.  All rights previously vested in plaintiff to "A-3" are restored.

C.    Action by the City that is alleged as coercive to negotiations or to compel an agreement is relevant and admissible at trial.

D.    The issue of attorneys' fees is reserved.

SO ORDERED.

DATED:    September 13, 2007

Thomas E. Delahanty II
Justice, Superior Court

PETER PLUMB ESQ
MICHAEL TRAISTER ESQ
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME 04104

NATALIE BURNS ESQ
DEBORAH MANN ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

SEP 24 2007

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-85
TED -Cum - 9,24.200?

THE PORTLAND COMPANY,

Plaintiff,

v.

THE CITY OF PORTLAND,

Defendant.

DECISION AND ORDER ON
DEFENDANT'S MOTION
*IN LIMINE*

Prior to trial and subsequent to the court's decision on pending issues, the defendant filed a Motion *in Limine* to exclude several issues for trial, including a jury determination of compensation for the taking of plaintiff's track rights in parcels A-1 and A-2 and any damages that may be found for a violation of 23 M.R.S.A. § 154-B (coercive action compelling an agreement on price). The City now maintains that the only viable claim for plaintiff is damages for the City's temporary taking of parcel A-3.[1]

The City's motion is based on a Stipulation and Agreement between the parties that was executed shortly after this action was commenced.[2]

The Agreement provided for a payment of $100,000 to plaintiff in exchange for the release of plaintiffs' rail connection rights to parcels A-1 and A-2.[3]

The effect of the Agreement allows the Riverwalk Development Project to take place and for plaintiff's lawsuit and claims to continue. It was agreed in the Stipulation that the City would "not allege or plead"

---

[1] In its prior decision, the court found that exigent circumstances warranting the taking by eminent domain did not exist as to parcel A-3. The taking was voided and plaintiff's rights were reinstated.

[2] The complaint was filed on July 7, 2005. The Stipulation and Agreement is dated August 16, 2005.

[3] The Agreement refers to parcels A, B, and C. It is agreed by the parties that for purposes of this case they are correspondingly designated as A-1, A-2, and A-3.

[II] (a) that the Company's Rights are without value because a portion of those Rights as they affect Parcels [A-1] and [A-2] have been released either to the City or to Riverwalk; and

[II] (b) that for purposes of the Company's contention that the City's taking of the Rights by eminent domain is invalid as a matter of law, the conveyance of the Rights to Riverwalk and/or its designee over Parcels A and B shall be deemed not to have occurred.

It was further agreed that payment for the release would not affect the valuation of any rights remaining in A-3, *see* paragraph III (a), and that if the plaintiff ultimately received un-apportioned damages as to the three parcels, the City would receive a credit for the amount received from Riverwalk. *See* paragraph III(c).

The City argues that the plaintiff waived "any claim for damages or other payment or relief" with respect to A-1 and A-2.

III. The Company and the City further stipulate that with respect to the price paid by Riverwalk to the Company for the Rights over Parcels [A-1] and [A-2] as follows:

* * *

(b) that the Company acknowledges that by releasing its rights in Parcels [A-1] and [A-2] to Riverwalk and/or the City, it *waives any claim to receive damages or other payment or relief* with respect to those parcels in this proceeding. (emphasis added)[4]

The City claims that this provision in the Stipulation encompasses any additional claim of compensation for property rights and damages for the alleged coercion.

Plaintiff's original complaint, which has not been amended, included allegations of a violation of 23 M.R.S.A. § 154-B (Count IV). It alleges

61. By virtue of the foregoing, the City's actions in taking The Track Rights from POCO constitute a violation of 23 M.R.S.A. § 154-B, have deprived POCO of rights guaranteed by said statute, and render the City's taking of The Track Rights illegal and void.

---

[4] The City does agree that the stipulation is not applicable as to plaintiff's claim that the taking is invalid. The court previously ruled in favor of the City on that issue as to Parcels A-1 and A-2.

In support of its section 154-B claim, POCO alleged in the complaint[5] that it had a valid contract with Riverwalk in the form of an Option to Purchase for a sum of up to $2 million to be determined by appraisal, subject only to Riverwalk obtaining necessary permits for the development. POCO further alleges that

> The City's taking of The Track Rights from POCO, if upheld, serves to destroy POCO's ability to close on its option contract with Riverwalk, as POCO will no longer own and be able to sell The Track Rights to Riverwalk.

*See*, plaintiff's complaint ¶ 41.

POCO argues that, even though it asserted a section 154-B claim in the complaint, the factual basis and evidence to support its claim was unveiled during the discovery process and there was no intent by plaintiff to include the claim as part of the Stipulation or limit its remedy under section 154-B.

Paragraph III (b) of the Agreement is unambiguous. It "waives any claim . . . with respect to those parcels [A-1 and A2] in this proceeding." Other portions of the Stipulation specifically exclude its application to parcel A-3 (*see*, ¶ III (a)), use as a defense to valuation of A-1 and A-2 (*see* ¶ II (a)), and the lawfulness or validity of the taking. (*see*, ¶ II (b))

Whether the language of ¶ III (b) is ambiguous is a question of law. *American Protection Insurance Co. v. Acadia Insurance Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, 993. If the language is "reasonably susceptible of different interpretations" it is considered ambiguous. *Id.* If the court finds that the language is unambiguous, "its interpretation is also a question of law," and the court will look at the "plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Id.* The Law Court also stated:

---

[5] See paragraphs 26 through 41 inclusive.

> [Any contract] is to be construed in accordance with the
> intention of the parties, which is to be ascertained from an
> examination of the whole instrument. All parts and clauses
> must be considered together that it may be seen if and how
> one clause is explained, modified, limited or controlled by
> others.

*Id.*, citations within omitted.

Reading the Stipulation as a whole, it is clear that it serves the intentions of both parties: Riverwalk and/or the City get POCO's track rights to A-1 and A-2 that interfered with the development; and, POCO gets compensation almost twenty times the amount provided in the City's condemnation, albeit substantially less than the claimed valuation of $2 million, the right to continue to challenge the validity of the taking for all three parcels and just compensation for A-3 if the taking is upheld.

POCO's section 154-B claims had already been alleged in the complaint. Any additional facts to support the claim that developed during discovery could, at best, enhance and support the claim but did not give rise to a new claim not known or alleged. Plaintiff's waiver of "any claim to receive damages" operates as a bar to all remaining claims except damages relative to a temporary taking of parcel A-3.

The clerk will make the following entry as the Decision and Order of the court:

- Defendant's Motion *in Limine* is granted.

- Plaintiff's only remaining claims are damages for the temporary taking of parcel A-3 and its claim for attorney's fees and costs.

SO ORDERED.

DATED:     September 24, 2007

Thomas E. Delahanty II
Justice, Superior Court

MICHAEL TRAISTER ESQ
PETER PLUMB ESQ
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME 04104

NATALIE BURNS ESQ
DEBORAH MANN ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. RE-05-85
                                                  TDW · CUM-3/48-01

THE PORTLAND COMPANY,

        Plaintiff,

        v.                                        ORDER

CITY OF PORTLAND,

        Defendant.


Prior proceedings in this case concerned the legality of the procedure by which track connection rights possessed by plaintiff Portland Company were taken by the City of Portland by eminent domain in 2005. Those proceedings culminated in a decision by the Law Court issued on September 3, 2009. Portland Co. v. City of Portland, 2009 ME 98. The remaining issue to be determined concerns just compensation for the taking.

Specifically, the question to be decided concerns the value of the Portland Company's track connection rights as they relate to the property designated in the City's July 6, 2005 takings order as Parcel A-3. A takings map showing the parcel in question is annexed to the complaint as Exhibit C. The Portland Company's claims for just compensation relating to the track connection easement over two other parcels, parcel A-1 and parcel A-2, have previously been settled.

Before the court are two pretrial issues. The first is presented by the Portland Company's motion in limine to bar the City from introducing evidence and argument based on the declarations in the City's takings order. The second concerns the

interpretation of certain aspects of the 1865 deed that granted the track connection rights at issue.[1] A hearing on those motions was held on March 18, 2011.

1. <u>Motion to Bar Evidence Based on Declarations in Takings Order</u>

The specific language in the City's takings order to which the Portland Company objects is contained in findings at pp. 2-3 of that order. Paragraphs (d) and (e) of those findings state that it is not in the best interest of the City to construct a railroad station on any of the parcels in question, that the City intends to prohibit the construction of such a station on any of the property, and that the City intends to prohibit any rail crossing of the Hancock Street Extension.

At the March 18 hearing counsel for the Portland Company clarified that the Portland Company was not seeking to preclude the takings order from being introduced into evidence at trial and that it was not seeking an order requiring that findings (d) and (e) be redacted. It is, however, seeking to preclude the City from relying on findings (d) and (e) based on the Law Court's prior ruling that "[t]he City cannot use its own eminent domain proceeding to argue that the Portland Company has no valid property interest." 2009 ME 98 ¶ 23.

The court agrees that the above principle stated by the Law Court is broad enough to prevent the City from using its eminent domain proceeding – and potentially self-serving statements in its takings order – to argue that the Portland Company's track connection easement has only a minimal value. If requested to do so, the court would be inclined to give a limiting instruction to that effect.

---

[1] Because the parties agree that interpretation of the deed is an issue of law to be determined by the court, the court does not need to reach another pending motion – a motion by the Portland Company to exclude the City from offering certain expert testimony at trial with respect to deed interpretation.

2

This will not preclude the City from independently establishing the propositions stated in findings (d) and (e). Moreover, the court would be prepared to reconsider this ruling at trial if the Portland Company offers evidence that makes it unfair to preclude the City from directing the jury's attention to the findings in question. See State v. Patterson, 651 A.2d 362, 367 (Me. 1994).

2. Deed Interpretation

The 1865 deed language creating the track connection easement provides as follows:

> The said Grand Trunk Rail Road Company also grants to the said Portland Company and its assigns, the right to maintain a connection from the works of the latter by one or two tracks with tracks of the Rail Road Company leading to its Station Building, in such manner as shall be best suited to the convenience of both Companies. And the said Atlantic Company, if it shall be at any time in possession of the said Rail Road Station grounds and buildings will, in like manner, grant to the Portland Company and its assigns, the right to continue and maintain such connection.

As noted above, the parties agree that the interpretation of this language is a question of law for the court. If there is no ambiguity, the plain meaning controls. If the deed language is ambiguous, then extrinsic evidence may be considered to determine the parties' intent. River Dale Ass'n v. Bloss, 2006 ME 86 ¶ 6, 901 A.2d 809, 811.

In interpreting the deed language and in determining whether any ambiguities exist, the court is not writing on a clean slate. The Law Court has previously ruled that certain aspects of the Portland Company's track connection rights have been resolved in prior litigation. 2009 ME 98 ¶ 23.

The prior litigation led to a 1990 Referee's Report that was adopted by the trial court and affirmed by the Law Court in Canadian National Railway v. Sprague, 609

3

A.2d 1175 (Me. 1992). In the aspect of the Referee's Report that is relevant to this case, the Referee ruled that the deed language set forth above created an appurtenant easement and went on to state as follows:

> Despite the fact that no tracks exist today and CNR has abandoned its right to operate rail service, the [Portland Company's] right is in abeyance but not abandoned or extinguished. Plaintiff argues that the purpose of the track connecting rights has been extinguished because the station building and tracks are gone and CNR has abandoned its right to operate a railroad network in this area. The Court finds that while currently defendants cannot utilize their connecting rights, the CNR property is still capable of supporting a rail system and it is premature to extinguish those rights.

Although both parties now accept that the above ruling controls, there remain a number of disputed issues as to the nature of the Portland Company's track connection rights which the 1990 Referee's Report does not necessarily resolve:

(a) "Works"

The parties appear to agree that the 1865 deed was originally intended to allow the Portland Company, which at that time operated a foundry that manufactured locomotives, boilers and steam engines,[2] to connect to railway tracks of either the Grand Trunk Rail Road or the Atlantic and St. Lawrence Rail Road. The Portland Company no longer operates a foundry or similar facility.

The court concludes that the deed language establishing a right to maintain a connection from the "works" of the Portland Company does not mean that the Portland Company has track connection rights only if it rebuilds or maintains a foundry or other manufacturing facility. First, the term "works" generally means a manufacturing facility but can include buildings formerly used for manufacturing. Second, at the time of the

---

[2] See Referee's Report at 2-3, 7, Findings of Fact ¶¶ 3, 5, 11.

4

Referee's Report, the Portland Company had ceased to use its land as a foundry and the referee did not suggest that this change had any relevance to its track connection rights.[3] Third, the Portland Company's easement runs with the land, and as a matter of law changes in the use of the dominant estate do not eliminate the easement. See Gutcheon v. Becton, 585 A.2d 818, 822 (Me. 1991). Finally, the court accepts a prior ruling by Justice Delahanty as the law of the case on this issue. See Trial Management Conference order dated September 13, 2007, denying City's motion in limine dated August 22, 2007.

(b) "Tracks . . . leading to its Station Building"

The issue here is whether, given that no station building currently exists, the Portland Company's track connection rights – currently in abeyance – will only emerge from their dormant state in the future if the City constructs a station building on parcels A-1, A-2, or A-3.

This issue is not resolved by the deed language or by any prior orders.[4] The Portland Company has referred to external evidence in the form of maps dating from 1882 and 1914 and argues that those maps demonstrate that the historical track connections between the Portland Company and the Grand Trunk tracks did not in fact

---

[3]    See Referee's Report at 2-3, Findings of Fact ¶¶ 3 and 4.

[4]    The Portland Company argues that the reference to "tracks . . . leading to its station building" is merely descriptive of the tracks on the property at that time. The City points out with equal force that the reference to the Atlantic Company's obligations if the latter should obtain possession of "said . . . station grounds and buildings" suggests that the track connection rights are tied to existence of a station on the property.

The Portland Company also argues that this issue is also resolved by Justice Delahanty's September 13, 2007 trial management order. However, a review of the motion that Justice Delahanty denied demonstrates that while the language "leading to its station" was mentioned, the arguments in that motion were directed to the issue of whether the Portland Company was required to maintain a "works." See Defendant's Motion in Limine dated August 22, 2007 at 2-4 (arguing that the City's motion should be granted "because Maine Narrow Gauge Railroad does not have a works on Plaintiff's property and because the uses Plaintiff have discussed do not relate to a connection to a works").

5

lead to any station. According to the Portland Company, this supports a conclusion that the reference to tracks "leading to [a] station" was merely descriptive.

The maps are at best inconclusive. The 1882 map does not show a station per se but does show, inter alia, a "freight house" and a "passenger depot." The track connection from the Portland Company on the 1882 map leads directly to the "freight house," and the 1882 map also indicates that a railcar could be shunted from the Portland Company to the "passenger depot" by throwing some switches.[5]

By the time of the 1914 map, the freight house and the passenger depot no longer appear, but the 1914 map shows a Grand Trunk station located to the northeast of the intersection of India and Fore Streets.[6] The track connections from the Portland Company property shown on the 1914 map do not lead directly to the station but, once again, a railcar could be shunted from the Portland Company to the station by throwing some switches.

Ultimately, however, the court concludes that the track connection rights should not be limited to the existence of a station on the City's property. The intent of the grant of track connection rights was to allow the Portland Company to connect to tracks on the land now designated as parcels A-1, A-2, and A-3. Those tracks were part of a rail system which included a station, but there is no reason to conclude that the immediate presence of a station was essential to the intent of the parties. The Portland Company was gaining access to tracks, not access to a station. See Referee's Report at 8, Finding of Fact ¶ 15 ("it was necessary for the Portland Company to have access to the Railroad's

---

[5] Part of the passenger depot is located on land that, according to the City's takings map, now belongs to One India Street Associates.
[6] That station is located on land that, according to the City's takings map, is now owned by the Portland Sewer District.

tracks for shipping and receiving"). The utility of that access would be the same regardless of where the station was located.

(c) "Convenience of Both Companies"

On this issue the court agrees with the Portland Company that the deed language granting the Portland Company "the right to maintain a connection . . . in such manner as shall be best suited to the convenience of both Companies" does not allow the City to prevent a connection by determining that any connection would be inconvenient.

(d) Relevance of Parcels A-1 and A-2.

At the March 18 hearing both counsel agreed that the jury would be asked to determine a value for parcel A-3 alone. However, there is a dispute between the parties as to whether parcel A-3 should be considered in isolation for valuation purposes or whether it should be valued as part of a larger entity comprising parcels A-1 and A-2 and A-3.

The parties have settled the Portland Company's claims with respect to parcels A-1 and A-2 and have stipulated that the Portland Company has waived any claim to relief with respect to parcels A-1 and A-2. Stipulation dated August 16, 2005, ¶ III(b). The Law Court relied on that provision in concluding that the Portland Company could not pursue a claim for coercion in violation of 23 M.R.S. § 154-B with respect to parcels A-1 and A-2. 2009 ME 98 ¶ 31. That ruling, however, does not resolve the issue of whether parcel A-3 should be valued in isolation or whether, although compensation shall be limited solely to parcel A-3, the jury can consider the relationship between A-3 and the other parcels in determining A-3's value.

7

On that issue the court finds ¶ III(c) of the stipulation to be determinative. That paragraph provides that if damages are ultimately awarded which are not apportioned between parcels A-1, A-2, and A-3, then the amount that the Portland Company received for A-1 and A-2 shall be deducted from the total award. Although the parties have since decided not to request the jury to determine an unapportioned award for all three parcels, ¶ III(c) demonstrates that, although any compensation awarded shall be limited to the value of parcel A-3 alone, the stipulation does not require A-3 to be considered in isolation.[7]

### (e) Other Issues

The Referee's Report determined that the track connection rights in question were "in abeyance" and could not be currently utilized but that those rights had not been extinguished or abandoned because the servient property remained "capable of supporting a rail system." If no tracks existed on the servient property at the time of the taking, the Portland Company's track connection rights remained in abeyance and could not have been exercised until and unless tracks to which a connection could be made were reinstalled on the servient property.[8] That does not mean that the track connection rights are without value but only that their value depends in part on the likelihood of track reinstallation at the time of the taking.

There was a reference at the March 18 hearing by counsel for the Portland Company to the possibility of track access to property other than the servient property,

_____

[7] Although not precisely on point, paragraphs II(a) and (b) of the stipulation also support the above conclusion.

[8] At the March 18 hearing counsel for the Portland Company suggested that there was some kind of track in existence at the time of the taking, which could mean that the Portland Company's track rights were no longer in abeyance. Counsel for the City responded that she believed this involved an aspect of the Narrow Gauge railway which is governed by a separate agreement. The court cannot resolve this issue on the present record.

8

specifically to the Ocean Gateway project along the shore to the southeast of the servient property. This was not explained fully and has not been briefed, and the court is uncertain whether counsel was referring to access to the Ocean Gateway area from tracks installed on the servient property or some other access. The court is not ruling at this time on the extent of the track connection rights as they may affect the Ocean Gateway property. This is particularly true in view of the ruling in the 1990 Referee's Report, affirmed by the Law Court in Sprague, that the Portland Company's predecessor in title had abandoned an easement it previously held to cross railroad property to reach the shorefront.

The last issue relates to the location of the track connection easement. The City points out that there is authority that easements of this nature, once established on the face of the earth, may not be relocated absent the consent of both parties. Davis v. Bruk, 411 A.2d 660, 664 (Me. 1980). It is not clear how this principle applies in the case of an easement that has been found to be in abeyance because there are no tracks on the servient property to connect to. As the court understands it, the Portland Company argues that if tracks are reinstalled on the servient property, it would have the right to connect to those new tracks even if it were necessary to relocate or extend its prior easement in order to do so. The City disagrees.

Davis v. Bruk involved a situation where the owner of the servient property was seeking to relocate the easement without the consent of the owner of the dominant property.[9] As far as the court can tell, neither party has offered any authority that would address the ability of the owner of the dominant property to relocate or extend an easement in order to effectuate its purpose when changes have been made on the

[9] The authors of the Restatement of Property have since proposed a modification of the rule followed in Davis v. Bruk. See Restatement (Third) Property §4.8(3) (2000). The Law Court has not had an occasion to consider the change proposed by the Restatement.

9

servient property. Given that it has been determined that the Portland Company's track rights still exist although there are currently no tracks on the servient property to connect to, the court concludes that the Portland Company would have the right to connect to future tracks on the servient property even if those tracks were not reinstalled in their historical location. However, any such connection would have to be made at a location that best suited the needs of the City.

The entry shall be:

1. Absent a further order from the court, the City shall be precluded from relying on findings (d) and (e) in the City's July 6, 2005 takings order. Final decision on this issue reserved until trial.

2. On the issues raised by the parties in their memoranda on deed interpretation, the court will construe the 1865 deed as set forth above for purposes of trial.

3. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED: March _23_ , 2011

Thomas D. Warren
Justice, Superior Court

10

K OF COURTS
ɔerland County
y Street, Ground Floor
and, ME 04101

MICHAEL TRAISTER ESQ
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME 04104

K OF COURTS
ɔerland County
ɪ Street, Ground Floor
ɪnd, ME 04101

NATALIE BURNS ESQ
DEBORAH MANN ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-05-85

THE PORTLAND CO.,

    Plaintiff,

v.

    ORDER

THE CITY OF PORTLAND,

    Defendant.

The remaining dispute in the above-captioned case involves the amount of pre- and post judgment interest payable upon the jury award of $ 715,000 to the Portland Company as just compensation for track connection rights over parcel A-3.

1. Prejudgment interest

In the wake of the jury's verdict, the City paid $ 794,899.77 on June 7, 20112. This amount was intended to cover the $ 715,000 jury award plus (a) prejudgment interest of $ 71,603.00, (b) post-judgment interest from the date of judgment to the date of payment, and (c) costs of $ 6,939.20.[1] The amount of pre-judgment interest paid by the City corresponds to prejudgment interest at 5.77% from the September 3, 2009 Law Court decision in the above-captioned case to the date of final judgment – a period of

---

[1] The court has not formally acted on the Portland Company's bill of costs but the award of those costs is unopposed.

slightly less than two years[2] out of the 2,150 days – five years and 10 months – that elapsed from the date of the taking to the entry of judgment.

The City contests payment of any additional pre-judgment interest beyond the amount it has already paid, contending that there is good cause under 14 M.R.S. § 1602-B(5) for the court to waive the remainder of the interest. Although prejudgment interest is a matter of right, especially where constitutional just compensation is at issue, section 1602-B(5) provides that prejudgment interest is suspended for any continuance obtained by the prevailing party of more than 30 days and that the court may additionally waive prejudgment interest upon a showing of good cause.

For its part the Portland Company seeks payment of prejudgment interest equaling $ 243,014.50, covering the entire time this action was pending to the date of final judgment. In support of its argument that there should be no subtraction from prejudgment interest, the Portland Company argues (1) that the constitutional right to interest as an element of just compensation overrides the court's ability to waive interest under § 1602-B(5) even if there were otherwise good cause to do so and (2) in the alternative, that good cause does not exist to diminish the award of prejudgment interest in this case.

On the first point, although there is considerable authority that interest is a necessary component of just compensation, the court has found no authority specifically addressing whether the just compensation requirement of the Maine Constitution precludes the court from withholding pre-judgment interest no matter

---

[2] In a letter to plaintiff's counsel, the City described its payment of prejudgment interest as covering 996 days from September 13, 2008 to the date of final judgment, but the amount it actually paid does not correspond to 996 days, and the arguments in the City's petition for partial waiver of pre-judgment interest are premised on the contention that prejudgment interest should be waived except for the period from the Law Court's September 2009 decision to the date of final judgment.

2

how many continuances are sought or no matter how much good cause would otherwise exist. The court concludes that it remains authorized to waive or suspend prejudgment interest under § 1602-B if it would be otherwise appropriate to do so.[3]

Turning to whether good cause has been shown, the court has reviewed the court file and the parties' various motions and filings since the case was commenced. Although claims for just compensation constitute just two of the eight causes of action set forth in the complaint, the court concludes that the Portland Company should not be barred from obtaining prejudgment interest from the date of the taking until May 3, 2007 just because the Portland Company joined its claim for just compensation with other challenges to the City's exercise of its eminent domain power.

On May 3, 2007, however, it appears that the court (Delahanty, J.) bifurcated the trial and determined that the Portland Company's just compensation claims should be deferred until its other claims had been decided. From that point until the Law Court's September 3, 2009 decision the parties were primarily occupied with litigating whether the taking of track rights was for a public use and was required by public exigency – issues on which the City either prevailed at trial or prevailed on appeal. During that time, the City also prevailed on the Portland Company's claim that the City had acted in bad faith and on whether the Portland Company had by stipulation relinquished its rights to compensation for parcels A-1 and A-2.

The vast majority of the time from May 3, 2007 until the Law Court's decision on September 3, 2009, therefore, was devoted to a detour during which the Portland Company unsuccessfully litigated issues other than its just compensation claim. If that

---

[3] The Portland Company argues that it must be found to have clearly and unequivocally waived its constitutional right to prejudgment interest as a component of just compensation before any such interest may be deducted. However, § 1602-B(5) does not require a finding that

3

detour had not been taken, final judgment on the Portland Company's just compensation claim could have been entered approximately 28 months earlier. Although the City was also unsuccessful on one issue litigated during that time period – its contention that the Portland Company's property interest had been extinguished, see 2009 ME 98 ¶¶ 20-23 – there is good cause to waive interest for that period given that the detour would not have been necessary but for the claims on which the Portland Company did not prevail and given that the Law Court expressly decided that the Portland Company was not the prevailing party in its September 3, 2009 decision. 2009 ME 98 ¶ 32.

There is no dispute that the Portland Company is entitled to prejudgment interest from the date of the Law Court's remand to the date of final judgment. As a result, the court concludes that the Portland Company is entitled to prejudgment interest from July 6, 2005 to May 3, 2007 and from September 3, 2009 to May 27, 2011 – a total of 1,297 days. Looking at the case as a whole, given the total length of time it took from the filing of the case to final judgment, there is good cause to waive prejudgment interest for 853 days representing a fair determination of the time spent, at a minimum, on the Portland Company's unsuccessful pursuit of other claims.

The court agrees that the City does not owe prejudgment interest on the $ 5,002.00 that it tendered at the time of the taking but that the Portland Company declined, in an excess of caution, to accept at that time.

2. Post-judgment interest

---

the Portland Company has waived its right to prejudgment interest. Rather it depends on a finding by the court that there is good cause for the court to waive prejudgment interest.

4

The court concludes that under <u>Carter v. Williams</u>, 2002 ME 50 ¶¶ 30-32, 792 A.2d 1093, 1100-01, the City's payment on June 7, 2011 must be credited first to the interest then owed and then to the principal judgment balance. The Portland Company shall then be entitled to post-judgment interest at 6.3% on the remaining judgment balance from June 7, 2011 to the date of final payment.

While, as set forth above, the Portland Company is entitled to receive its costs, it is not entitled to post-judgment interest on the award of costs.

The entry shall be:

The City owes prejudgment interest at 5.77% on $709,998 ($ 715,000 minus $ 5,002.00) for a total of 1,297 days through the date of final judgment. The City owes post-judgment interest at 6.3% on the full jury award of $ 715,000 from May 28, 2011 through June 7, 2011.

The City's payment of $ 794,899.77 on June 7, 2011 shall be credited first to the pre and post judgment interest owed as of that date and then to the principal judgment amount. The City shall pay the remaining judgment balance plus post-judgment interest on the remaining judgment balance at 6.3% until the date of final payment.

Costs of $ 6,939.20 are also awarded to the Portland Company.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: August_/5, 2011

Thomas D. Warren
Justice, Superior Court

5

---

**01** 0000003687          BURNS, NATALIE
    10 FREE STREET PO BOX 4510 PORTLAND ME 04112
    F      CITY OF PORTLAND                          DEF       RTND    05/25/2011

**02** .0000002342          MANN, DEBORAH
    10 FREE STREET PO BOX 4510 PORTLAND ME 04112
    F      CITY OF PORTLAND                          DEF       RTND    01/12/2007

**03** 0000001136          PLUMB, PETER
    75 PEARL STREET PO BOX 9785 PORTLAND ME 04104-5085
    F      THE PORTLAND COMPANY                       PL        RTND    07/07/2005

---

**04** 0000008138          TRAISTER, MICHAEL
    75 PEARL STREET PO BOX 9785 PORTLAND ME 04104-5085
    F      THE PORTLAND COMPANY                       PL        RTND    07/07/2005

**05** 0000001121          WOOD, GARY C
    389 CONGRESS STREET PORTLAND ME 04101
    F      CITY OF PORTLAND                          DEF       RTND    07/21/2005