2011 ME 8

**Edmund J. SANSEVERINO et al.**

v.

**Mary GREGOR, Trustee of Meadows and Mountains Trust et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2010.

Decided: Jan. 6, 2011.

---

Thomas M. Brown, Esq., John R. Canders, Esq. (orally), Eaton Peabody, Bangor, ME, for Meadows and Mountains Trust, SWH, Inc., and Michael Lane.

Richard C. Cleary, Esq. (orally), Cleary Law Office, P.A., Houlton, ME, for Edmund J. Sanseverino and Gerald R. Holmes.

Dean A. Beaupain, Esq., Law Offices of Dean A. Beaupain, Millinocket, ME, for amici curiae Zane Daggett, Michael McGraw, Torrey Sylvester, Russell Taylor, Michael Walsh, and Philip Wright.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] This case arises out of a claim that property owners were violating a restrictive covenant in a deed that prohibited those owners from engaging in commercial or business activities on their property. The defendant property owners, the Meadows and Mountains Trust and SWH, Inc., along with Michael Lane, appeal from a judgment of the Superior Court (Aroostook County, *Hunter, J.*) enjoining them from engaging in timber harvesting and road construction that is not directly and immediately related to a specific residential use of property.[1] The Trust argues that the court erred in holding that one of the plaintiffs, Gerald R. Holmes, had standing; in denying the Trust's motion to dismiss the complaint pursuant to M.R. Civ. P. 12(b)(7); and in holding that the restrictive covenant language was not ambiguous. We affirm the judgment.

---

1. For simplicity, we refer to the defendant property owners collectively as "the Trust." The court found that defendant Michael Lane has an ownership interest in SWH, Inc., and SWH, Inc. has an interest in multiple lots that are subject to the restrictive covenant. Lane also was involved in the timber harvesting at issue, although the court found that he does not own real estate involved in this litigation in his own name.

## I. BACKGROUND

[¶ 2] In its judgment enjoining the Trust from timber harvesting and road construction, the court found the following facts, which are supported by competent evidence in the record. *See Sebra v. Wentworth,* 2010 ME 21, ¶ 5, 990 A.2d 538, 541. The properties at issue are located in a development near Meduxnekeag Lake in Linneus, Maine, called "Meduxnekeag Lake Properties." All of the relevant properties are taxed pursuant to Maine's Tree Growth Tax Law, with the exception of any portions of the lots that owners withdrew to build homes. *See* 36 M.R.S. §§ 571 to 584–A (2010).[2] The deed to each of the MLP properties contains the following restrictive covenant: "The lot shall be used only for single-family residential purposes and no commercial or business activity shall be conducted on the lot." Although Sanseverino, the Trust, and SWH, Inc. each owned various lots within MLP, Holmes initially did not own an MLP lot.

[¶ 3] In the summer of 2004, the Trust arranged for Michael Lane to cut timber from some of the Trust's lots, and to construct "fire roads" on its property. Lane built the roads, cut and removed substantial quantities of timber with large commercial timber harvesting equipment, and sold the timber for a profit at lumber mills. In response, Sanseverino and Holmes filed a complaint against the Trust seeking to enjoin the timber harvesting, road construction, and other violations of the restrictive covenant.

[¶ 4] The Trust moved for partial summary judgment, arguing that Holmes lacked standing to enforce the restrictive covenant because, at that time, he did not own an MLP lot. Although the court initially granted the Trust's motion on procedural and standing grounds, the court later allowed Holmes to rejoin the suit after he acquired an MLP lot subject to the restrictive covenant at issue. *See* M.R. Civ. P. 21.

[¶ 5] The Trust then moved to dismiss the complaint pursuant to M.R. Civ. P. 12(b)(7) for failure to join other MLP lot owners whose property rights might be affected. The court denied the motion. After a bench trial, the court concluded that the language in the restrictive covenant was unambiguous and found that the specific timber activity and related road construction engaged in by the Trust property owners violated the deed's restrictions on commercial or business activity. The court enjoined the Trust and its principals "from engaging in any further commercial or business activity within MLP, including but not limited to any further timber harvesting or road construction that is not directly and immediately related to a specific residential use of property." The Trust appealed.

## II. DISCUSSION

[¶ 6] The court considered the facts presented, engaged in a view of the subject properties, applied the law, and articulated its decision clearly. We agree with the court's analysis and briefly explain our conclusions regarding the Trust's three arguments.

[¶ 7] The Trust first argues that Holmes lacked standing because he was required to have an interest in the property subject to the restrictive covenant at the outset of the litigation. Contrary to the Trust's contention, the court acted within

---

**2.** The program requires participants to prepare a forest management and harvest plan for each parcel and update it every ten years and submit "a statement from a licensed professional forester that the landowner is managing the parcel according to schedules in the plan." 36 M.R.S. § 574–B(1), (2) (2010).

its discretion to add or drop parties from the litigation when it allowed Holmes to rejoin the litigation. *See Kelly v. Michaud's Ins. Agency, Inc.,* 651 A.2d 345, 346–47 (Me.1994); *see also* M.R. Civ. P. 21 and Reporter's Notes 1959 ("This Rule is the same as Federal Rule 21."); 4 James Wm. Moore et al., *Moore's Federal Practice* 21.02[3] (3d ed.2007) (stating that the decision of whether to grant a motion under Rule 21 "is left to the sound discretion of the trial court").

[¶ 8] The Trust also contends that the court erred in denying the Trust's motion to dismiss pursuant to M.R. Civ. P. 12(b)(7) for failure to join other lot owners pursuant to Rule 19, because the court's ruling could affect their interests arising from the restrictive covenant and the Tree Growth Tax Law, *see* 36 M.R.S. §§ 571 to 584–A. Joinder of the other lot owners is not required in this case, however, and the record supports the court's finding that other lot owners were not directly interested in the litigation.[3] Failure to join other lot owners in the development did not prevent the parties "from fully adjudicating the underlying dispute," did not expose the parties "to multiple or inconsistent obligations," and did not prejudice the interests of the absent lot owners. *Muther v. Broad Cove Shore Ass'n,* 2009 ME 37, ¶ 9, 968 A.2d 539, 542; *see Ocwen Fed. Bank, FSB v. Gile,* 2001 ME 120, ¶ 14, 777 A.2d 275, 280; *Centamore v. Comm'r, Dept. of Human Servs.,* 634 A.2d 950, 951 (Me. 1993). The court specifically limited its findings and its judgment to the current commercial or business activities on the Trust's lots, and the court's judgment does

not impede the ability of unnamed parties to enforce their rights in the future. Accordingly, the court neither erred in concluding that joinder of the other lot owners was not required by M.R. Civ. P. 19 nor in denying the Trust's motion to dismiss pursuant to M.R. Civ. P. 12(b)(7).

[¶ 9] Regarding the interpretation and effectuation of the restrictive covenant, the Trust argues that the court should have considered extrinsic evidence because the meaning of the restrictive covenant is ambiguous and produces the absurd result of banning all incidental commercial activity. Contrary to the Trust's contention, the meaning of "single-family residential purposes" and "no commercial or business activity" is unambiguous. *See Silsby v. Belch,* 2008 ME 104, ¶ 12, 952 A.2d 218, 222; *River Dale Ass'n v. Bloss,* 2006 ME 86, ¶ 6, 901 A.2d 809, 811. The court properly construed the covenant independently, without reference to the other mortgage documents and deeds, because those documents were not executed at the same time and had fundamentally different purposes. *See Kandlis v. Huotari,* 678 A.2d 41, 43 (Me.1996). Accordingly, the court properly limited its interpretation to the plain and unambiguous meaning of the language expressed in the restrictive covenant. *See River Dale Ass'n,* 2006 ME 86, ¶ 6, 901 A.2d at 811.

[¶ 10] Ultimately, the task before the trial court was to determine, factually, whether the Trust's current timber harvesting and road construction constituted commercial or business activity. The court, after taking a view of the site, found

---

3. Although the Trust argues that joinder of other lot owners was required in light of their enrollment in Maine's Tree Growth Tax Law, *see* 36 M.R.S. §§ 571 to 584–A (2010), participation in this program is voluntary and enrollment does not inherently violate the restrictive covenant. Furthermore, there was

no error in the court's finding of insufficient evidence in the record that other lot owners were engaging in activities substantially similar to those undertaken by the Trust. *See Sebra v. Wentworth,* 2010 ME 21, ¶ 5, 990 A.2d 538, 541.

that "[t]imber was cut in volume, removed and transported out of the area with large equipment and sold for profit at local mills." The court found that the Trust was using its land "as a working commercial forest" to "generate revenues that could support the business objectives of the Trust and SWH, Inc.," and that there was no residential use of the property within the foreseeable future. The record discloses no error in these factual findings; therefore, the court's ultimate finding that the activities violated the restrictive covenant is supported. *See Sebra,* 2010 ME 21, ¶ 5, 990 A.2d at 541.

The entry is:

Judgment affirmed.