2008 ME 104

**James SILSBY Jr. et al.**

v.

**Anthony BELCH et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 28, 2008.

Decided: June 24, 2008.

Timothy C. Woodcock, Esq., Eaton Peabody, Bangor, ME, for the appellants.

Daniel A. Pileggi, Esq., Roy, Beardsley, Williams & Granger, LLC., Ellsworth, ME, for the City of Ellsworth.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] James Silsby Jr., and others appeal from a judgment entered by the Superior Court (Hancock County, *Hjelm J.*) affirming the decision of the City of Ellsworth's Planning Board.[1] Silsby raises arguments focusing on alleged errors on the part of the Planning Board and the Superior Court, on the Superior Court's denial of his motion for a M.R. Civ. P. 80B trial, and the proper standard to be applied by the court in construing the express terms of a deed to real estate. We affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] Anthony and Elizabeth Belch purchased property, located at 328 Main Street in Ellsworth, in August 2002. It is located in a residential area in the City and is composed of four separate lots. Three of the four deeds conveying the lots have a covenant that states in relevant part:

The Grantees ... covenant and agree with the Grantor ... that they will not construct on the premises herein conveyed any buildings, with the necessary and convenient other buildings to serve a homestead ... and it is *further covenanted and agreed* as aforesaid that they will not permit the premises to be used for any commercial purposes.

The deed for the fourth lot has a similar covenant that reads in relevant part, "[t]he said grantees ... covenant with the said grantor ... that they will only use the [property] for residential or dwelling house purposes and that said premises will not be used for any commercial or industrial use...."

[¶ 3] The Belches applied to the code enforcement officer for a building permit to convert an existing building on the property into a three-unit apartment building. This permit was granted and renovations were completed. Following this, the City requested that they submit an application for minor subdivision approval. The Belches did so and, after notice and two hearings, the Planning Board voted to approve the Belches' application.

[¶ 4] James Silsby and a number of the abutting and surrounding property owners filed an appeal in the Superior Court challenging the approval of the Belches' minor subdivision application pursuant to Rule 80B of the Maine Rules of Civil Procedure.[2] The Superior Court, in an order dated June 18, 2007, denied Silsby's motion for a trial of the facts and concluded that the language of the covenant did not bar the conversion of the property to an apartment building. Silsby filed a timely appeal.

---

1. Carol Silsby, Robert Winglass, Julia Winglass, Richard Spinney, Nancy Foster, George Howard, Donald Root, Robert Field, Maxine Field, Thomas Hawes, Cynthia Hawes, and Sharon McIntyre, all residents of the Main Street neighborhood where the Belches' property is located, join Silsby on this appeal. They will be collectively referred to as "Silsby" for the purposes of this decision.

2. The City of Ellsworth and the City of Ellsworth Planning Board are not parties to this appeal. Before the Superior Court, the City and Planning Board filed an answer, a request for an extension of time, and an opposition to Silsby's appeal from the Board. Nothing has been filed with this Court. This case has been renamed accordingly.

## II. DISCUSSION

[¶ 5] Silsby presents two main arguments.[3] First, he argues that the Superior Court erred in denying his motion for a M.R. Civ. P. 80B(d) trial of the facts.[4] Second, he argues that the Superior Court erred in interpreting the language of the deeds' covenants.

[¶ 6] Pursuant to M.R. Civ. P. 80B(d), a party may move for a trial on the facts.[5] The purpose of such a trial is not to retry the facts but rather to permit the court to obtain facts that are not present in the record. *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 240–41. Because courts review the language of a deed de novo, the only relevant consideration is the language of the deed. A trial of facts in such circumstances is unnecessary as the court's review is appropriately limited to the existing record and the four corners of the deed.

[¶ 7] As construction of a deed is a question of law, it is reviewed de novo. *River Dale Ass'n v. Bloss*, 2006 ME 86, ¶ 6, 901 A.2d 809, 811. This standard of review applies to the interpretation of a restrictive covenant. *Id.* The relevant language will be given its ordinary meaning and this meaning governs unless there is ambiguity present. *Id.*; *see also Pettee v. Young*, 2001 ME 156, ¶ 8, 783 A.2d 637, 640 ("A court construing the language in a deed must give the words their general and ordinary meaning . . . ." (quotation marks omitted)). "If the language of a deed is unambiguous, it will guide interpretation of the parties' intent." *Bennett v. Tracy*, 1999 ME 165, ¶ 8, 740 A.2d 571, 573 (quotation marks omitted).

[¶ 8] The identical covenants in the first three deeds provide that the owner "will not construct on the premises herein conveyed any buildings, with the necessary and convenient other buildings to serve a homestead, at a cost less than $8,000 . . . [and he or she] will not permit the premises to be used for any commercial purposes."[6] Silsby argues that the clauses prohibit the use of the house on the property as a multi-unit apartment building and effectively require that the

---

**3.** Silsby presents additional arguments that do not merit consideration.

**4.** In support of his motion, Silsby asserts that he was unable to present relevant evidence at the Planning Board proceedings.

**5.** The Rule states that:
> [t]he moving party shall also file a detailed statement, in the nature of an offer of proof, of the evidence that the party intends to introduce at trial. That statement shall be sufficient to permit the court to make a proper determination as to whether any trial of the facts as presented in the motion and offer of proof is appropriate under this rule and if so to what extent.

M.R. Civ. P. 80B(d).

Silsby, in his motion, tendered an offer of proof regarding the nature of other properties in the existing subdivision, the nature of the restrictive covenants in the deeds that he claims prohibit the Belches' use, and an alleged conflict of interest on the part of a Planning Board member. The Superior Court found he had made a detailed statement regarding the first two points, but that this was evidence that could have been developed at the hearing before the Board. It further found that, as to the claim of bias, his statement was not sufficiently detailed and did not comply with M.R. Civ. P. 80B(d). The claim of bias has not been appealed or argued on appeal and is therefore not before the Court. *See, e.g., Holland v. Sebunya*, 2000 ME 160, ¶ 9 n. 6, 759 A.2d 205, 209. The Court properly denied the motion for trial of the facts.

**6.** The last deed does not include this language; instead it includes a covenant that provides that the owner "will only use the hereinbefore described premises for residential or dwelling house purposes. . . ." Use of the property as a rental property falls within this use as it is residential.

property be only used for owner-occupied, single-family dwellings. He emphasizes the use of the word "homestead" in the covenants and argues that it creates, as a term of art, a use restricted to owner-occupied, single-family dwellings.

[¶ 9] His argument is not persuasive. The plain language of the deeds does not invoke the word "homestead" to define the use of the property. On the contrary, "homestead" is used to describe the type and character of outbuildings that may be constructed upon the property. The clause serves only to establish two independent requirements for buildings erected upon the property after the execution of the deed. The buildings must: (1) be of a character that ordinarily *serves* a homestead (e.g., a garage, a gardening shed, a gazebo, or such, but not a commercial store, gasoline station, manufacturing facility, or such); and (2) have a minimum cost of $8000.

[¶ 10] Although the language of the deed suggests an intention on the part of the grantor to prevent the use of the property for commercial applications, it contains no restriction upon the character of the residential use. If a grantor intended to restrict property to owner-occupied, single-family residential use, it is a simple matter to plainly state such a restriction in the deed. The Belches are not constrained in the character of their residential use of the property by the deed covenants.

■ [¶ 11] Turning to the second clause, Silsby argues that the "[not] for any commercial purposes" language prohibits any use undertaken with a view to profit, and thus the use of the property as a rental property is barred by the covenant.[7] His argument is not persuasive.

■ [12] The focus of the analysis is on the common and ordinary meaning of the language. A dictionary may be relied on to help determine this meaning. *See Rockland Plaza Realty Corp. v. City of Rockland,* 2001 ME 81, ¶ 12, 772 A.2d 256, 260 (holding such in the context of statutory interpretation). "Commercial" is defined as: "[o]f or relating to commerce" and "[h]aving profit as a primary aim." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 286 (1984); *see also Beckley v. Town of Windham,* 683 A.2d 774, 775 (Me. 1996) (defining "commercial" as "having profit as a chief aim").

[¶ 13] A person residing in an apartment building is not, by virtue of residing in an apartment, engaged in commerce or working "having profit as [her] primary aim." The fact that a resident pays some manner of rent to a building owner, creating a profit in some instances and in some instances not, does not in itself render the residential building a commercial enterprise. The property, like an owner-occupied, single-family residence beside it, remains a place for people to live. Its character is fundamentally different from a department store or service station.

[¶ 14] Adopting Silsby's reading would result in an affirmative rule of law holding that every single- or multi-family residence that is rented for use by someone other than the owner is a commercial enterprise. Under such a rule of law, innumerable properties would invariably run afoul of local zoning ordinances prohibiting com-

---

7. The fourth deed reads, as pertinent here, that the owner covenants "that said premises will not be used for any commercial or industrial use." This choice of language, barring not just "commercial" but also "industrial" uses, buttresses the point that the object of the restriction is activities that are engaged in commerce as their primary activity, such as a service station or an auto body shop, and not activities that are only commercial in an ancillary manner, such as residing in an apartment building.

mercial uses. The use of this property is residential; the fact that this use may involve income in some fashion does not change a fundamentally residential use to a commercial enterprise. The fact remains that the original grantor could have limited the use of this property to an owner-occupied, single-family residence if she wished by placing such commonly used language in the covenant. The granting of the minor subdivision application by the Ellsworth Planning Board reflected a proper application of the applicable law and an appropriate construction of the terms of the deeds.

The entry is:

Judgment affirmed.