MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 62
Docket:        BCD-22-201
Argued:        January 12, 2023
Decided:       September 5, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.
Majority:      JABAR, HORTON, CONNORS, and LAWRENCE, JJ.
Dissent:       MEAD, J., and STANFILL, C.J.


DEBRA MORGAN et al.

v.

ERIK S. TOWNSEND


HORTON, J.

[¶1]  Erik S. Townsend appeals from an entry of summary judgment by the Business and Consumer Docket (*Duddy, J.*) in an action brought by Townsend's neighbors, Debra and Douglas Morgan and P. Jason Ward as Trustee of the P. Jason Ward Revocable Trust (collectively "the Morgans and Ward").  The court issued a declaratory judgment and injunction based on its determination that Townsend's short-term rentals of his oceanfront property have violated a deed restriction that limits the use and occupancy of the property and the structures on it.  We affirm the court's declaratory judgment that Townsend's rentals have violated the restriction, but we vacate the injunction against further violations because it needs to be more specific on

what does and does not comply with the deed restriction. We remand for further proceedings consistent with this opinion.

## I. BACKGROUND

[¶2] "The following facts are derived from the summary judgment record" and viewed in the light most favorable to Townsend. *Stiff v. Jones*, 2022 ME 9, ¶ 2, 268 A.3d 294. We discern no disputed material facts.

[¶3] Townsend, the Morgans, and Ward own three neighboring oceanfront lots in a residential subdivision created in the 1960s by the McConchie brothers on a peninsula in the Town of Cushing. Each lot in the subdivision is subject to a restrictive covenant contained in the deeds transferring the lot that, in one pertinent single sentence, provides,

> The premises herein conveyed shall not be used or occupied for any purpose other than for private residential purposes and no trade or business shall be conducted therefrom; and no building, structure, trailer, mobile home, object or thing whatsoever other than a private dwelling house for use and occupancy by one family and such out buildings as are usual, customary and appurtenant to a private residence shall be erected or placed thereon, and not more than one such dwelling shall be erected or placed on said lot[.]

The restriction also specifies that it is intended to burden and benefit the other lots created from the same original tract:

> Conveyances of other lots from the tract of land of which the herein conveyed premises is a portion, shall be conveyed subject to the

above restrictions, which said restrictions shall inure to the benefit of the respective land owners from said original tract.

[¶4]   The structures on Townsend's five-acre lot are a five-bedroom, five-bathroom main house, and a two-bedroom, one-bathroom guest cottage with a kitchen.  He advertises the structures as providing sleeping space for up to thirty-two people.  The main house has a 900-square-foot recreation room, twenty-four commercial-grade Adirondack style chairs, a hot tub, a commercial-grade lobster cooker, a fire pit, outdoor recreation equipment, flood lighting, an outdoor deck, and a barbeque grill.  Townsend has not lived full-time on the property since the 1970s and has not visited it since 2019, but he continues to store personal belongings there.

[¶5]   Both the Morgans and Ward have resided primarily at their properties since 2020.  Ward's property also has a main house and guest house, although only the main house is winterized.  In addition to the main house, the Morgans' property has a garage with an upstairs bedroom and bath.

[¶6]   In 2019, Townsend began renting his entire property for short intervals to one group at a time.[1]  Townsend advertises his rental property on

---

[1] Prior to 2019, Townsend rented out only the guest cottage.

Vrbo and AirBnb.[2] Townsend's advertisements have described the property as the "[b]est oceanfront property for large groups on the coast of Maine!" Townsend has required rentals between May and November to be for a minimum of one week but has allowed shorter rentals between November and May. Between May 2019 and September 2021, Townsend rented out the property to approximately fifty-nine groups (allowing up to thirty-two people in each group) with an average size of a dozen. Townsend has not limited rentals of the property to family groups, nor has he inquired whether prospective renters are members of the same family.

[¶7] Townsend employs a property manager to coordinate rentals, cleaning, and maintenance, and he pays the manager fifteen percent of the rental income. He reports the rental fees as income on his federal tax returns and indicates that the property is not for his personal use. Townsend collects Maine lodging taxes on the rental fees and remits them to the state.

---

[2] Vrbo (an acronym for "Vacation Rentals by Owner") and AirBnb are website businesses that connect owners of residential property with people seeking lodging. *Get to know Vrbo*, Vrbo, vrbo.com/about (last visited Aug. 23, 2023), available at https://perma.cc/83WY-D9L3; *About Us*, Airbnb, news.airbnb.com/about-us/ (last visited Aug. 24, 2023), available at https://perma.cc/4GSE-YJUB; *see* Nat Ives, *Vrbo Changes Its Name to Match How People Say It*, Wall St. J. (Mar. 27, 2019), https://www.wsj.com/articles/vrbo-changes-its-name-to-match-how-people-say-it-11553659260#:~:text=The%20company%20long%20known%20as,%27, available at https://perma.cc/RM5Z-MRGT.

[¶8] On June 17, 2020, the Morgans and Ward filed a two-count complaint against Townsend. Their standing to assert their claims has never been in question because their title descended from the land that the McConchie brothers once owned, and their title is subject to the same restrictive covenant. *See Doyon v. Fantini*, 2020 ME 77, ¶ 6 n.3, 234 A.3d 1222. The first count of their complaint sought a declaratory judgment that Townsend is violating the restrictive covenant by

> (i) erecting on the premises two structures designed to house transient guests;
> (ii) using the property and the structures for lodging houses;
> (iii) allowing dozens of people from multiple families to utilize the property simultaneously; and
> (iv) using the entirety of the property to operate a business.

The second count asserted a nuisance claim against Townsend based on the noise associated with his rentals and trash left on the neighbors' properties.

[¶9] The Morgans and Ward later filed an amended complaint to clarify that Ward's land is held in a trust. In August 2020, Townsend answered the complaint, and in March 2021, he filed a counterclaim.[3] In his counterclaim, Townsend alleged that if he were in breach of the restrictive covenant then the

---

[3] Townsend also filed a third-party complaint that added several parties to the litigation, including neighbors whose lots are subject to the same restrictive covenant. Many of the added parties filed motions to dismiss, which the court granted. By the time of Townsend's appeal, the parties added by the third-party complaint were no longer part of the case.

Morgans and Ward were also in breach of the same covenant. In July 2021, the Morgans and Ward filed a second amended complaint to add a claim for injunctive relief. The Morgans and Ward asked the court to permanently enjoin Townsend "from using his land or erecting or maintaining structures on his land in violation of the restrictive covenants in his deed."

[¶10] In January 2022, the Morgans and Ward filed a motion for summary judgment. Townsend opposed the motion and cross-moved for summary judgment on the grounds that his rentals of his property do not violate the restrictive covenant and that the Morgans and Ward had violated the restrictive covenants in their own deeds. None of the parties' summary judgment filings offered extrinsic evidence of the intent of the McConchie brothers in imposing the restrictions.

[¶11] On May 9, 2022, the court entered summary judgment in favor of the Morgans and Ward on their claims for declaratory judgment and injunctive relief, but denied summary judgment on the nuisance claim, citing genuine disputes of material fact. In the same order, the court denied Townsend's cross-motion on his counterclaim because he had failed to show that the Morgans and Ward had violated the restriction in their own deeds. The court

observed that it did not need to reach the Morgans and Ward's potentially applicable defenses of laches and unclean hands.

[¶12]  Citing precedent from Maine and other jurisdictions, the court determined that the restrictive covenant unambiguously limited Townsend's property and the structures on it to use and occupancy by one family.  It decided that Townsend's pattern of short-term rentals to large groups, with no effort by him to determine whether each group constituted a family, violated the restriction's requirement that the property be used and occupied for "private residential purposes," as well as its requirement that the "single dwelling house [be] for use and occupancy by one family."  The court also decided that the same pattern of rentals, along with Townsend's tax treatment of the rental income, payment of lodging taxes, use of an accounting system, and retention of a property manager, demonstrated that Townsend "is using the [p]roperty to conduct a full-scale commercial business in violation of the restrictive covenant."  The court held that the Morgans and Ward had waived any claim based on the presence of two dwellings on Townsend's property.  The court entered an injunction as follows: "Townsend is permanently enjoined from using his Property in violation of the restrictive covenant contained in his deed."

[¶13]  Townsend filed a motion to alter or amend the judgment to clarify the scope of the injunction.  M.R. Civ. P. 59(e).  The court denied the motion without comment.  Townsend timely appealed.[4]  *See* M.R. App. P. 2B(c)(1), (2)(D).

## II.  DISCUSSION

[¶14]  This appeal presents the first occasion for us to consider the effect of a restrictive covenant that limits the uses of residential property upon short-term rentals through online services such as Vrbo and Airbnb.

[¶15]  "We review a grant of a motion for summary judgment de novo, [and] view[] the evidence in the light most favorable to [Townsend]" as the nonmoving party.  *Badler v. Univ. of Me. Sys.*, 2022 ME 40, ¶ 5, 277 A.3d 379 (quotation marks omitted); *see River Dale Ass'n v. Bloss*, 2006 ME 86, ¶ 5, 901 A.2d 809.  "A grant of summary judgment will be affirmed if there are no genuine issues of material fact and the undisputed facts show that the prevailing party was entitled to a judgment as a matter of law."  *Badler*, 2022 ME 40, ¶ 5, 277 A.3d 379 (quotation marks omitted).  "A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material

---

[4]  The court granted the parties' consented-to motion to dismiss Count 2 (the nuisance claim) of the Morgans and Ward's second amended complaint, thereby creating a final judgment. M.R. Civ. P. 41(a)(2).

fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive." *Angell v. Hallee*, 2014 ME 72, ¶ 17, 92 A.3d 1154 (quotation marks omitted).

[¶16]   Our analysis begins with an overview of the law regarding interpretation of covenants and then turns to the deed restriction on the parties' properties.

## A.    Interpretation of a Restrictive Covenant in a Deed

[¶17]   The interpretation of a deed containing a restrictive covenant presents a question of law that we consider de novo.  *River Dale Ass'n*, 2006 ME 86, ¶ 6, 901 A.2d 809; *Sleeper v. Loring*, 2013 ME 112, ¶ 10, 83 A.3d 769. "The cardinal rule in the interpretation and construction of deeds, as in the case of any contract, is to seek to ascertain the intention of the parties."  *Sargent v. Coolidge*, 399 A.2d 1333, 1344 (Me. 1979).  "In determining the intent of the parties to the deed, we look at the instrument as a whole."  *Windham Land Tr. v. Jeffords*, 2009 ME 29, ¶ 24, 967 A.2d 690.

[¶18]   In construing language within a deed, we first give words their plain and ordinary meaning to determine if they create any ambiguity.  *Sleeper*, 2013 ME 112, ¶ 12, 83 A.3d 769; *River Dale Ass'n*, 2006 ME 86, ¶ 6, 901 A.2d 809.  The ordinary or plain meaning of a term within a restrictive covenant is

determined by its dictionary definition if the covenant itself does not define the term. *See River Dale Ass'n*, 2006 ME 86, ¶¶ 7-8, 901 A.2d 809. "[I]f the language of a deed is unambiguous, it will guide interpretation of the parties' intent." *Green v. Lawrence*, 2005 ME 90, ¶ 7, 877 A.2d 1079 (quotation marks omitted). If language in a deed is ambiguous, meaning that it is susceptible of multiple interpretations and "the intention of the parties [to the deed] is in doubt," then extrinsic evidence may be introduced to determine the parties' or grantor's intent. *Sylvan Properties Co. v. State Plan. Off.*, 1998 ME 106, ¶ 8, 711 A.2d 138; *see Green*, 2005 ME 90, ¶ 7, 877 A.2d 1079; *N. Sebago Shores, LLC v. Mazzaglia*, 2007 ME 81, ¶ 13, 926 A.2d 728. "In the absence of extrinsic evidence, the intent of the parties should be ascertained" by using the rules of construction of deeds. *Almeder v. Town of Kennebunkport*, 2019 ME 151, ¶ 26, 217 A.3d 1111 (quotation marks omitted). The rules of construction of deeds require us "to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." Restatement (Third) of Prop.: Servitudes § 4.1(1) (Am. L. Inst. 2000); *see* 3 Michael Allan Wolf, *Powell on Real Property* § 24.04, Lexis (database updated 2023). Any remaining "ambiguities [will] be resolved in favor of the interpretation that least restricts

the free use of the property." *Doyon*, 2020 ME 77, ¶ 8, 234 A.3d 1222. If the covenantor's intent remains in doubt, we will turn to public policy for guidance. Restatement (Third) of Prop.: Servitudes § 4.1(2); *see* 9 Michael A. Wolf, *Powell on Real Property* § 60.05.

**B.    The Deed Restriction**

[¶19]  Bearing in mind that the deed is to be interpreted as a whole, there are three phrases that are especially pertinent and merit individual attention:

- "[t]he premises herein conveyed shall not be used or occupied for any purpose other than for private residential purposes";

- "no trade or business shall be conducted therefrom"; and

- "no building . . . other than a private dwelling house for use and occupancy by one family."

As have the parties and the court, we examine each in terms of its common meaning or meanings and then assess all three in the context of the restriction as a whole.

**1.    "Private residential purposes"**

[¶20]   The term "private" has two unambiguous meanings relevant here—"not public" and "reserved for use." *See Hines v. Heisler*, 439 So. 2d 4, 6 (Ala. 1983) ("We conclude that when the word 'private' is used in connection with the word 'residence,' it means single family residence."); *Flaks v. Wichman*,

260 P.2d 737, 739 (Colo. 1953) ("The word 'private' has a clear meaning, and, as applied here, connotes that the word 'residence' as used in its singular sense is peculiar to the privacy of one . . . family, and would not apply to structures for two or more families."); *Fox v. Sumerson*, 13 A.2d 1, 2-4 (Pa. 1940) ("The distinction between a private dwelling house or a private residence on the one hand and a house built or occupied as a residence for two or more families is quite obvious.  In the one case it is single, private, and personal; in the other it is a sort of tenement affair." (quotation marks omitted)); *see also Property*, *Private Property*, Black's Law Dictionary (11th ed. 2019) ("Property— protected from public appropriation—over which the owner has exclusive and absolute rights.").  The "not public" meaning somewhat favors the interpretation of the Morgans and Ward, because Townsend has advertised and made available the use and occupancy of his property to members of the public dozens of times.  The "reserved for use" meaning weighs somewhat in favor of Townsend's interpretation because the use and occupancy of Townsend's property has always been "private" for the group renting it.  We conclude that the restriction's use of the word "private" serves simply to limit Townsend's rentals to one group at a time.  There is no evidence that Townsend has ever violated that limitation.

[¶21] Regarding the "residential purposes" term of the covenant, what appears to be a slight majority of the courts that have interpreted the word "residential" in the context of deed restrictions has deemed it not to preclude short-term rentals. *See, e.g.*, *Slaby v. Mountain River Ests. Residential Ass'n*, 100 So. 3d 569, 578-79 (Ala. Civ. App. 2012); *Lowden v. Bosley*, 909 A.2d 261, 267-69 (Md. 2006); *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 288-92 (Tex. 2018); *Craig Tracts Homeowners' Ass'n v. Brown Drake, LLC*, 477 P.3d 283, 286-87 (Mont. 2020); *Lake Serene Prop. Owners Ass'n v. Esplin*, 334 So. 3d 1139, 1142-43 (Miss. 2022). As the Montana Supreme Court in *Craig Tracts* observed, "[t]hese decisions focus on *what* is being done at a particular premises, not *how long* any particular individual is doing the activity for." 477 P.3d at 286 (emphasis in original). The Court of Appeals in *Lowden* noted, "[t]he word 'residential' has been applied to apartment buildings, fraternity houses, hotels, and bed-and-breakfasts, because such structures are used for habitation purposes. The transitory or temporary nature of such use does not defeat the residential status." 909 A.2d at 267 (citations omitted); *see also* 334 So. 3d at 1142 ("Even though the property had been rented out for as little as one day, . . . when the property is used as a place of abode, the use is considered residential no matter how short the rental period.").

[¶22]   Other courts have concluded that, in the context of both deed restrictions and zoning regulations, short-term property rentals are not consistent with "residential" uses and character.  *See, e.g.*, *Styller v. Zoning Bd. of Appeals*, 169 N.E.3d 160, 170-71 (Mass. 2021); *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899-904 (Pa. 2019); *Hensley v. Gadd*, 560 S.W.3d 516, 521-26 (Ky. 2018); *Bostick v. Desoto Cnty.*, 225 So. 3d 20, 23-26 (Miss. Ct. App. 2017); *O'Connor v. Resort Custom Builders, Inc.*, 591 N.W.2d 216, 219-21 (Mich. 1999); *Ewing v. City of Carmel-By-The-Sea*, 286 Cal. Rptr. 382, 388-90 (Cal. Ct. App. 1991).

[¶23]   Our own precedent includes a few decisions in which we have considered covenants that limit use of property to "residential purposes" or "residential uses," or disallow use for "commercial" purposes.  *See Silsby v. Belch*, 2008 ME 104, ¶¶ 2, 8-14, 952 A.2d 218; *Sanseverino v. Gregor*, 2011 ME 8, ¶¶ 9-10, 10 A.3d 735; *Jeffords*, 2009 ME 29, ¶¶ 24-36, 967 A.2d 690.  In *Silsby*, we considered residential restrictions without defining the word "residential." *See generally Silsby*, 2008 ME 104, 952 A.2d 218.  In *Jeffords*, we defined the word "residential" in a way that appears to favor the interpretation that the Morgans and Ward give the covenant here but on closer review is more neutral. 2009 ME 29, ¶¶ 27-28, 967 A.2d 690.

[¶24]  In *Jeffords*, a land trust that held a conservation easement limiting use of the burdened property to "residential recreational purposes" sued the property owners, claiming that the owners' plan to open the property to paying members of the public for fishing, skiing, hiking, and sleigh rides violated the easement.  *Id.* ¶¶ 2-10.  We agreed with the land trust, based on our interpretation of "residential":

> We apply the common, everyday understanding of the word "residential," which is "of or relating to residence or residences." Webster's New Collegiate Dictionary 977 (1979).  The definition of "residence" is understood to include: "1a: the act or fact of dwelling in a place for some time; b: the act or fact of living or regularly staying at or in some place for the discharge of a duty or the enjoyment of a benefit; 2a(1): the place where one actually lives as distinguished from his domicile or a place of temporary sojourn." *Id.*
>
> The meaning of "residential recreational purposes," therefore, refers, unambiguously, to recreational activities associated with those who are regularly living at that locale.  Thus, the deed's several references to "residential recreational purposes" indicate the parties' intent to restrict the use of the Protected Parcel to the residents of the front fifteen acres for their recreational purposes, and to preclude the income-producing or -generating uses proposed by the Owners.

*Jeffords*, 2009 ME 29, ¶¶ 27-28, 967 A.2d 690.

[¶25]  What distinguishes *Jeffords* from this case, however, is that the servient owner sought to open the burdened property to recreational use by day visitors, i.e., people whose use could not be deemed "residential" under any

reasonable definition of the term. *Id.* ¶¶ 32, 36. The issue of whether "residential recreational purposes" would extend to recreational use of the property by overnight guests was not before us.

[¶26] To say that a covenant limiting use of property to "private residential purposes" means literally that only persons legally domiciled at the property may spend the night there would impose a wholly impractical limitation on property by prohibiting the owner from inviting friends, family, and other guests to visit. Such a stance would likewise be contrary to the principle of construing restrictive covenants in favor of the free use of property. *Doyon*, 2020 ME 77, ¶ 8, 234 A.3d 1222. We therefore do not interpret the phrase "private residential purposes" in the covenant, standing alone, to prevent Townsend or any of the other lot owners from inviting overnight guests, including paying guests, to their properties. Still, we do not exclude the possibility that Townsend's practice of renting it in absentia on a short-term basis to dozens of groups yearly could have an adverse effect on the residential character of the neighborhood and thus violate the "private residential purposes" provision of the covenant. Exploring that possibility would entail a fact-intensive inquiry, similar in focus to the inquiry that the Morgans and Ward's nuisance claims would have entailed had they been pursued, and the

court's grant of summary judgment on this ground might not stand. *See River Dale Ass'n*, 2006 ME 86, ¶¶ 12-13, 901 A.2d 809. However, it becomes unnecessary for us to proceed further regarding "private residential purposes" because we agree that the Morgans and Ward were entitled to summary judgment on their contention that Townsend has violated the "no trade or business" provision of the covenant.

### 2. "No trade or business shall be conducted therefrom"

[¶27] The Morgans and Ward argue that Townsend conducts a business on his property akin to an unhosted hotel or bed-and-breakfast business because he regularly rents his property to large groups, receives rental income, pays lodging taxes on that income, reports that income on his taxes, and maintains an accounting system.[5] Townsend points out that he only rents to one group at a time. He also relies on our clear precedent to the effect that the owner of residential property does not engage in commercial activity merely by renting the property. *See Silsby*, 2008 ME 104, ¶¶ 11-14, 952 A.2d 218.

---

[5] The Morgans and Ward also point to various components of Townsend's property as evidence of business activity: the 900-square-foot recreation room, the twenty-four commercial-grade Adirondack chairs, the hot tub, the commercial-grade lobster cooker, the fire pit, the outdoor recreation equipment, the flood lighting, the outdoor deck, and the barbeque grill. Although these amenities could be consistent with the operation of a business, they are not necessarily inconsistent with an owner-occupied property.

[¶28]   Townsend's deed does not define the meaning of "trade or business," and the dictionary includes at least ten different definitions.  One definition of "business" refers to "a commercial or industrial establishment; store, factory, etc."  *Business*, Webster's New World College Dictionary (5th ed. 2016).  The definition of "business" contained in the Maine tax statute is even broader: "any activity engaged in with the object of gain, benefit or advantage, either direct or indirect."  36 M.R.S. § 1752(1-C) (2023).

[¶29]   The fact that Townsend and his property manager are not on the property while renters are present may distinguish Townsend's property from a hotel and a bed-and-breakfast establishment, but it does not necessarily mean that he is not operating a trade or business at the property.  Businesses with physical premises accessible to customers—for example, laundromats, parking lots, amusement arcades, ATM locations, and farmstands—may operate without any staff on site.

[¶30]   In *Silsby*, we considered whether the conversion of an existing single-family structure into a three-unit apartment building violated a restrictive covenant that prohibited use of the property "for any commercial purposes."  2008 ME 104, ¶¶ 3, 11-14, 952 A.2d 218 (quotation marks omitted).  We said that "the fact that this use may involve income in some fashion does

not change a fundamentally residential use to a commercial enterprise." *Id.* ¶ 14. We further commented that to hold otherwise "would result in an affirmative rule of law holding that every single- or multi-family residence that is rented for use by someone other than the owner is a commercial enterprise. Under such a rule of law, innumerable properties would invariably run afoul of local zoning ordinances prohibiting commercial uses." *Id.* In the context of residential property rental, the rule of *Silsby* is that the owner of a three-unit building who rents to long-term tenants is not running a business at the property. *Silsby*, 2008 ME 104, ¶¶ 11-14, 952 A.2d 218. Though the restriction at issue here derives from a covenant rather than an ordinance, and though the covenant does not utilize the word "commercial," the analogy to *Silsby* remains apropos. That Townsend rents his property and has a property manager does not establish that he is operating a trade or business there.

[¶31] On the other hand, Townsend's claim that he is not running a business on the property is contrary to the growing trend among state and local governments, in Maine and elsewhere, to regulate short-term rentals—often defined to mean rentals for fewer than thirty days at a time—as a business activity. *See, e.g.*, 30-A M.R.S. § 4364-C(2) (2023) (authorizing municipalities to "establish and enforce regulations regarding short-term rental units");

Bar Harbor, Me., Code § 174 (Sept. 7, 2021), https://ecode360.com/37980653 (last visited Aug. 30, 2023), available at https://perma.cc/24DJ-S3DK; Falmouth, Me., Code ch. II-23 (July 26, 2021), https://online.encodeplus.com/regs/falmouth/doc-viewer.aspx#secid-778, (last visited Aug. 30, 2023), available at https://perma.cc/L4DN-9LR3; Commission to Increase Housing Opportunities in Maine by Studying Land Use Regulations and Short-term Rentals, 130th Legis. 49-52 (Nov. 2022) (providing a summary of Maine municipal short-term rental ordinances compiled by the Maine Legislature's Office of Policy and Legal Analysis); *see generally* Nicholas E. Anania, Comment, *The Short-Term Rental Economy in Rural Maine Communities: An Opportunity for Economic Growth Instead of a Target for Regulation*, 71 Me. L. Rev. 341, 352-55 (2019) (reviewing Maine municipal ordinances regulating short-term rentals). The fact that Townsend's rentals are subject to the Maine sales tax imposed on lodging is also indicative of the operation of a business, because it means that his rentals are treated as if he were operating a hotel or rooming house. 36 M.R.S. § 1811(1)(D)(3) (2023) (sales tax assessed at "[n]ine percent on the value of rental of living quarters in any hotel, rooming house or tourist or trailer camp"). The lodging tax obligation is the direct result of the short-term nature of his rentals because

rentals of more than twenty-eight days to persons who reside at the property are exempt from sales and use tax. *See* 36 M.R.S. § 1760(20)(A) (2023).

[¶32] Townsend's fifty-nine rentals in twenty-eight months equates to an average of more than two a month, or twenty-four per year. "Frequency of sales is one criterion of a business." *Adam v. Comm'r*, 60 T.C. 996, 1001 (1973). Although "[n]o arbitrary or definite rule can be laid down which would describe the boundary between the doing of certain infrequent or isolated transactions for profit and the continuous and habitual carrying on of such transactions to such an extent as to amount to a regular business," *Kaplan v. Gaskill*, 187 N.W. 943, 945 (Neb. 1922), that does not mean that the boundary can never be drawn. A household that puts items in the driveway to sell on one Saturday is holding a garage sale; a household that does it every Saturday is operating a flea market business. Townsend's pattern of use, maintenance, advertising, and holding out of his property brings his rentals squarely within the definition of a business, such as a "hotel." *See* 36 M.R.S. § 1752(4) ("'Hotel' means every building or other structure kept, used, maintained, advertised as or held out to the public to be a place where living quarters are supplied for pay to transient or permanent guests and tenants.").

[¶33]  We conclude that the court was correct in deciding that the undisputed facts show that Townsend has been using the property to operate a business on his property in violation of the covenant.[6]

### 3.  "No building . . . other than a private dwelling house for use and occupancy by one family"

[¶34]  Of the three restrictions contained in the covenant, the "one family" restriction is the most ambiguous in terms of both its interpretation and its enforcement.  The Morgans and Ward argue that Townsend has violated the

---

[6] The Dissent contends that Townsend is not violating the "no trade or business" provision of the covenant because the pertinent provision includes the word "therefrom" as opposed to "therein" or "thereon" and notes that "[n]one of Townsend's rentals are taking place *from* the property—they take place wholly *upon* the property."  Dissenting Opinion ¶ 44.  This interpretation of the covenant would mean that Townsend could operate a hotel, a bed and breakfast, or a campground on his property, because all those businesses would operate on the property and cater to overnight guests.  In fact, like any business with a physical location, Townsend's rental business seeks to attract customers to his property, and in that sense, it operates from, on, and at his property.

The Dissent states, "If the grantors intended to forever bar residential rentals of the property, the deed language could have, and presumably would have, explicitly said so."  *Id.*  We do not construe the covenant to bar residential rentals, only the operation of a short-term residential rental business.  *See supra* ¶ 26.

The Dissent also suggests that our opinion "provides no rationale or quantitative standards for how parties and the trial courts are to define what constitutes a 'trade or business' in this frequently occurring setting."  Dissenting Opinion ¶ 48.  We have decided that because Townsend's sole use of his property is to rent it very frequently and exclusively for short periods, he is conducting a business from and at his property in violation of the covenant.  *See supra* ¶¶ 32-33.  If he rented it month-to-month or year-to-year, or if he rented it only occasionally for short periods, he would not be.  *See supra* ¶ 31.  The Dissent also faults our decision for not defining in concrete numerical terms what rentals the covenant does and does not permit.  Dissenting Opinion ¶ 48 ("The Court's model anticipates a continuum based in part on the degree of use where, at some undefined tipping point, the rental of a vacation property ceases to be a 'non-business' and becomes a business.").  We easily could define a "tipping point," but we view the promulgation of specific standards for the permanent injunction as, at least initially, a task for the trial court with input from the parties.  *See infra* ¶ 39 & n.9.

"one family" restriction in the covenant by renting the property to groups of up to thirty-two people without verifying that they are members of one family. Townsend responds by pointing out that there is no evidence that any of his fifty-nine groups of up to twenty-eight people have not consisted of members of a family.

[¶35] Relying on our decisions in *Silsby* and in *Boehner v. Briggs*, 528 A.2d 451 (Me. 1987),[7] Townsend contends that the restriction's linkage of the "one family" reference to the description of the dwelling demonstrates an intent only to "limit[] the type of structure to a single-family dwelling, i.e., a single family dwelling is permitted, but a multi-unit or apartment building is not." The Morgans and Ward respond by pointing out that the restriction's phrasing, "a private dwelling house for use and occupancy by one family," consists of a description of the structure—"private dwelling house" followed by a separate

---

[7] In *Silsby*, one issue was whether a deed restriction limiting structures to those that "serve a homestead" should be construed to prohibit construction of a three-unit apartment building on the property. *Silsby v. Belch*, 2008 ME 104, ¶¶ 3-4, 8-10, 952 A.2d 218. The opponent of the project contended that "the use of the word 'homestead' in the covenants . . . creates, as a term of art, a use restricted to owner-occupied, single-family dwellings." *Id.* ¶ 8. We rejected that interpretation, noting that "[t]he plain language of the deeds does not invoke the word 'homestead' to define the use of the property. On the contrary, 'homestead' is used to describe the type and character of outbuildings that may be constructed upon the property." *Id.* ¶ 9. In *Boehner v. Briggs*, we considered a challenge to the construction of an addition to a home on property subject to a deed restriction prohibiting the erection of "more than a one family dwelling on the . . . premises." 528 A.2d 451, 452 (Me. 1987). We explained that the addition did not violate the covenant because "[t]he new structure does not contain any kitchen facilities to support a separate family nor a full bath. There is no evidence in the record that the new structure will house a family other than the Briggs' immediate family." *Id.* at 453.

limitation that can only be construed to apply to how the structure may be used and occupied.

[¶36] What undercuts the Morgans and Ward's argument is that the "one family" restriction cannot be construed strictly or literally; if it were, no unrelated houseguest could ever be invited to stay the night on any of the properties subject to the restriction. In addition, the definition of "family" has plainly evolved over the decades since the covenant was instituted. Keeping those points in mind, along with the precept favoring the free use of property, *Doyon*, 2020 ME 77, ¶ 8, 234 A.3d 1222, we conclude that the single-family limitation can reasonably be interpreted to indicate that at least some of the people who are occupying and using the property at any given time should be related in some way. The record does not establish that any of Townsend's rental groups failed to meet that standard.

### 4. The Restriction as a Whole

[¶37] Viewing the restriction as a whole, we conclude that, by using his property exclusively for short-term rentals, Townsend is operating a business at the property in violation of the covenant. We therefore agree with the court that the Morgans and Ward are entitled to injunctive relief to prevent future violations.

## C.     The Injunction

[¶38]   The court's judgment includes an injunction stating only that "Townsend is permanently enjoined from using his Property in violation of the restrictive covenant contained in his deed."  The court later denied Townsend's motion pursuant to M.R. Civ. P. 59(e) seeking clarification.  "Rule 65(d) of the Rules of Civil Procedure requires that an injunction be specific in terms and describe in reasonable detail the act or acts sought to be restrained." *Sebago Lake Camps, Inc. v. Simpson*, 434 A.2d 519, 522 (Me. 1981) (alteration and quotation marks omitted); *see* M.R. Civ. P. 65(d).  Rule 65(d) requires specificity and "reasonable detail" so that courts create injunctions that provide a clear understanding of what is allowed and what is prohibited. M.R. Civ. P. 65(d); *Sebago Lake Camps, Inc.*, 434 A.2d at 523.  We agree with Townsend that the injunction against him needs to be recrafted.

[¶39]   The interpretation that we have given the deed restriction does not prohibit Townsend from renting his property.  Two forms of rental do not violate the prohibition of the conduct of a trade or business from the property. A year-round or month-to-month rental of the property to a single group clearly would not violate the covenant because it would not constitute business or commercial activity under *Silsby* and also would fall outside the common

definition of "short-term rental" to mean rentals for fewer than twenty-eight days. Similarly, occasional short-term rentals to one group at a time totaling a small number of days per year would not indicate the conduct of a trade or business. *See* 36 M.R.S. § 1764 (2023) (generally exempting from sales and use tax "casual rentals" of a single residential unit for fewer than fifteen days per year). On remand, the court should recraft the injunction to define "short-term rental" and to set a limit, consistent with the definition, on the number of days per year that Townsend may use the property for short-term rentals. As noted above, one source for defining "short-term rental" consists of municipal ordinances and state laws regulating short-term rentals. *See supra* ¶¶ 27-33. Guidance for setting the limit on the total days per year permitted for short-term rentals may also be found in the distinctions that federal and state tax laws have drawn between business rentals and non-business rentals of residential properties.[8] The court may, in its discretion, convene an evidentiary hearing limited to the question of what specific terms should be included in a

---

[8] Federal income tax law provides that if the owner of a residence rents the property for fewer than fifteen days per year, rental receipts need not be reported as income and any rental expenses are not deductible. 26 U.S.C.A. § 280A(g)(1)-(2) (Westlaw through Pub. L. No. 118-10). As previously discussed, Maine tax law does not treat residential rentals of twenty-eight days or more as subject to the sales tax imposed on lodging, consistent with our jurisprudence holding that a long-term residential rental is not inherently a commercial or business activity. 36 M.R.S. § 1760(20)(A) (2023); *Silsby*, 2008 ME 104, ¶¶ 11-14, 952 A.2d 218. Maine also exempts from lodging tax casual rentals, meaning "rental of living quarters rented for a total of fewer than 15 days in the calendar year." 36 M.R.S. § 1764 (2023).

permanent injunction,[9] and in any event may invite recommendations from the parties on these and other aspects of the injunction, including verification procedures and requirements for enforcing, modifying, or terminating the injunction.

[¶40]   We therefore affirm the court's judgment as to Townsend's violation of the covenant, vacate the injunction, and remand for the court to amend the injunction.

The entry is:

> Injunction vacated.   Judgment affirmed in all other respects.   Remanded for further proceedings consistent with this opinion.

---

MEAD, J., with whom STANFILL, C.J., joins, dissenting.

[¶41]  I respectfully dissent.

---

[9]  An evidentiary hearing is not required on whether the Morgans and Ward are entitled to injunctive relief because the essential facts are undisputed.  *See Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010) ("In the usual course, a district court should conduct an evidentiary hearing before issuing a permanent injunction.  However, because no factual issues remained for trial, the district court's decision to grant a permanent injunction without such a hearing can still be upheld if it properly granted summary judgment . . . .") (alterations, quotation marks, and citation omitted).  However, there may be factual questions relating to relief—the terms of the injunction—that should be developed at a hearing.  *See United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001) ("A hearing on the merits—*i.e.*, a trial on liability—does not substitute for a relief-specific evidentiary hearing unless the matter of relief was part of the trial on liability, or unless there are no disputed factual issues regarding the matter of relief.").

[¶42] I do not disagree with the Court's recitation of facts,[10] identification of the issues, standards for reviewing summary judgments, identification of principles for the interpretation of deed restrictions, or well-reasoned analysis of the "private residential purposes" and "occupancy by one family" issues. I do, however, depart from the Court's conclusion that the "no trade or business" restrictive covenant in these parties' deeds limits Townsend's prerogative to make use of his property by renting it as a vacation destination. The Court's particular focus on the frequency and length of Townsend's rentals in determining whether the practice constitutes a business creates, in my view, an elusive standard with enormous implications for the legions of Maine property owners who derive income from the rental of their residential properties, particularly in the summer months.

[¶43] As noted by the Court, the parties' deeds contain the following restrictive covenant in a single sentence:

> The premises herein conveyed shall not be used or occupied for any purpose other than for private residential purposes and *no trade or business shall be conducted therefrom*; and no building, structure, trailer, mobile home, object, or thing whatsoever other than a private dwelling house for use and occupancy by one family and such out buildings as are usual, customary and appurtenant to a private residence shall be erected or placed thereon, and not

---

[10] I would note the fact that Count 2 in the original complaint alleging nuisance has been voluntarily dismissed without prejudice and remains available to the appellees as an alternative means of addressing their grievances.

> more than one such dwelling shall be erected or placed on said lot[.]

Court's Opinion ¶ 3 (emphasis added).  The summary judgment record contains no information regarding the grantors' intent as to whether rentals of the properties constituted a "trade or business."  Furthermore, it is probably safe to assume that the grantors could not have anticipated the emergence of online private rental services such as Vrbo and Airbnb.

[¶44]  At the outset, I note that the grantors used the word "therefrom" and not "therein" or "thereon."  The difference is subtle, but potentially significant.  One dictionary defines "therefrom" as "*from* there; from a . . . place."  *Therefrom*, Cambridge Dictionary, https://dictionary.cambridge.org /dictionary/english/therefrom (last visited August 15, 2023) (emphasis added).  None of Townsend's rentals are taking place *from* the property—they take place wholly *upon* the property.  If the grantors intended to forever bar residential rentals of the property, the deed language could have, and presumably would have, explicitly said so.[11]

---

[11]  It seems unlikely that the original grantors would have intended to wholly prevent rentals in what is described in the summary judgment record as a vacation community.  More importantly, as the trial court correctly found, "The parties do not dispute that renting out properties in the neighborhood is permissible under the covenants."

[¶45]  Further, the fact that Townsend actively markets his property as a premium getaway destination and derives income from it does not, ipso facto, establish that he is conducting a business as prohibited by the "no trade or business" restrictive covenant.  *See Slaby v. Mountain River Ests. Residential Ass'n, Inc.*, 100 So. 3d 569, 580 (Ala. Civ. App. 2012) ("When the [property owners] rent their cabin, they no doubt realize some pecuniary gain, but neither that financial benefit nor the advertisement of the property or the remittance of a lodging tax transforms the nature of the use of the property from residential to commercial . . . ."); 9 Michael Allan Wolf, *Powell on Real Property* § 60.05, Lexis (database updated 2023).

[¶46]  The Court does not disagree with that tenet and indeed underscores the danger stated in *Silsby v. Belch*, 2008 ME 104, ¶ 14, 952 A.2d 218, that a holding to the contrary "'would result in an affirmative rule of law holding that every single- or multi-family residence that is rented by someone other than the owner is a commercial enterprise.  Under such a rule of law, innumerable properties would invariably run afoul of local zoning ordinances prohibiting commercial uses.'"  Court's Opinion ¶ 30 (quoting *Silsby*, 2008 ME 104, ¶ 14, 952 A.2d 218).  The Court also notes, and I agree, that the fact that Townsend does not reside at the property, derives rental income from

it, and employs a property manager does not necessarily establish that he is operating a trade or business there. *Id.*

[¶47] The Court draws heavily on provisions of Maine's tax code that establish tax obligations and exemptions based upon a renter's length of residence at rented facilities. Court's Opinion ¶ 31; *see* 36 M.R.S. §§ 1760(20)(A), 1811(1)(D)(3) (2023). I respectfully submit that definitions and policies underpinning state tax obligations are of little use in ascertaining a grantor's intent in creating a restrictive covenant or interpreting terms that are employed in non-tax settings.

[¶48] The linchpin for the Court's determination that Townsend's rentals constitute a business for purposes of the restrictive covenant—and the point where I depart company from the Court's reasoning—is the frequency of the rentals. Court's Opinion ¶ 32. The Court concludes that Townsend's use, maintenance, advertising, and description of his property "bring his rentals squarely within the definition of a business, such as a 'hotel,'"[12] *id.*, but provides no rationale or quantitative standards for how parties and the trial courts are to define what constitutes a "trade or business" in this frequently occurring

---

[12] Again the Court cites a tax code definition of "hotel," thus now adopting that definition as precedent in non-tax cases. Court's Opinion ¶ 32.

setting.[13]   The Court's model anticipates a continuum based in part on the degree of use where, at some undefined tipping point, the rental of a vacation property ceases to be a "non-business" and becomes a business.

[¶49]  The Court's attempt to define "trade or business" by essentially saying *it is in the eye of the beholder* and then invoking volume as the touchstone fails to provide guidance to the owners of the "innumerable properties" described in *Silsby*.  2008 ME 104, ¶ 14, 952 A.2d 218.  Indeed, the Court here vacates the injunction and remands the matter to the Superior Court with instructions that it be "recraft[ed] . . . to define what constitutes a short-term rental."  Court's Opinion ¶ 39.

[¶50]  In doing so, the Court offers this vague guidance to the court and the parties: "occasional short-term rentals to one group at a time totaling a small number of days per year would not indicate the conduct of a trade or business" for purposes of the restrictive covenant despite the fact that money is clearly changing hands.  *Id*.  Whatever a "short-term rental" is thereafter deemed to mean becomes the foundation for the terms of the injunction.  The Court again directs the trial court to the state tax code for guidance on setting

---

[13]  Although this matter concerns a particular restrictive covenant, the Court's holding and adoption of tax code definitions will have implications for future ordinances and statutes concerning rentals of private residential properties.

limits on short-term rentals. *Id.*; *see supra* n.13.  I cannot concur in this process, particularly when the plaintiffs do not challenge Townsend's basic prerogative to rent his property—it is the irresponsible and disrespectful use by some renters that drove them to this action.  I fear that the Court's adoption of a process that determines whether a permitted use is, or is not, a "business" based upon the extent of use creates a slippery slope that can devolve into arbitrariness.

[¶51]  I do agree with the court's observation that "[t]his appeal presents the first occasion for us to consider the effect of a restrictive covenant that limits the uses of residential property upon short-term rentals through online services such as Vrbo and Airbnb."  Court's Opinion ¶ 14.  The arrival of internet-based mass marketing has greatly increased the magnitude of use of many goods and services, including short-term rentals of privately owned properties.  Has this increased usage transmogrified these private properties into de facto hotels as the Court has concluded?  Rental of privately owned vacation properties or other residential facilities is a well-established practice in Maine.  The Court's decision today threatens that practice, at least when a restrictive covenant—even one that does not specifically address such usage—is involved.  Public policy in response to momentous changes in society should

be, in the first instance, within the exclusive domain of local ordinances and statewide statutes, not the subject of after-the-fact interpretation of restrictive covenants by grantors who could not have anticipated the advent of internet-based marketing of rental properties.

[¶52] The appellees' reaction to their plight of owning property adjacent to a property where renters occasionally engage in raucous and annoying behavior that interferes with the peaceful enjoyment of their own properties is fully understandable. The appellees' chief objective is to foreshorten the behaviors, not necessarily to curtail private rentals. Reducing the number of rentals may arguably (or hopefully) reduce the number of disturbances, but it will not provide them with the ultimate remedy they seek—neighbors who are as quiet and respectful as they are.

[¶53] I would conclude on the basis of the summary judgment record that Townsend's rental of his property does not violate the terms of the restrictive covenant prohibiting "a trade or business . . . conducted therefrom." Accordingly, I would vacate the summary judgment and remand for further proceedings.[14]

---

[14] I presume, without being certain, that the appellees' nuisance claim might be resurrected in the context of such a remand.

Andrew W. Sparks, Esq. (orally), and William J. Kennedy, Esq., Drummond & Drummond, LLP, Portland, for appellant Erik S. Townsend

David A. Soley, Esq. (orally), and Glenn Israel, Esq., Bernstein Shur, Portland, for appellees Debra Morgan, Douglas Morgan, and P. Jason Ward as Trustee of the P. Jason Ward Revocable Trust

Business and Consumer Docket docket number REA-2021-4
FOR CLERK REFERENCE ONLY